(No. 4023—

L. Balkin Builder, Inc., an Illinois Corporation, Claimant, vs. State of Illinois, Respondent.

*Opinion filed April 18, 1950.*

*Supplemental Opinion filed December 15, 1950.*

Brown, Fox and Blumberg, Attorneys for Claimant.

Ivan A. Elliott, Attorney General; C. Arthur Nebel, Assistant Attorney General, for Respondent.

Schuman, C. J.

Claim is brought by L. Balkin Builder, Inc., an Illinois corporation, against the State of Illinois, which arises out of a contract dated November 26, 1943 for making repairs on the substructure and superstructure of the bridge over the Illinois River at Peru, LaSalle County, Illinois.

One of the first questions to consider is whether or not the ''Standard Specifications for Road and Bridge Construction'', adopted July 1, 1942 by the Department of Public Works and Buildings, Division of Highways, is a part of the contract in its entirety. The Departmental Report filed in this Court on February 23, 1949 on page 6 sets forth the following:

"The Standard Specifications for Road and Bridge Construction, adopted July 1, 1942, as supplemented and amended, are to be used only when referred to in this contract as set forth in Paragraph 5.0 of the Specifications, and at no other time. Extra work is specifically provided for in the

contract between claimant and respondent under Paragraph XV of the Memorandum of Agreement. Therefore, the provisions of the Standard Specifications, as alleged by claimant, do not apply, and claimant is not entitled to any further payment under this count of the complaint."

There is no express provision in the contract in question making said "Standard Specifications" a part of said contract. The only thing that appears in the record is the testimony of J. A. Todson, Chief of Operations for the Division of Waterways, who stated that general specifications are included in all contracts, and that he referred to "Standard Specifications" adopted July 1, 1942.

Respondent cites *Henkel Construction Company* v. *State of Illinois*, 10 C.C.R. 538. On page 542 of that opinion the Court specifically held that the pertinent parts of the "General Specifications" pertaining to acceptance of last payment by the contractor were made a part of the contract.

Respondent also cites *Madison Construction Company* v. *State of Illinois*, 11 C.C.R. 64, but in that case the "Standard Specifications" were specifically made a part of the contract.

Respondent also cites *L. B. Strandberg & Son Co.* v. *State of Illinois*, 13 C.C.R. 49. This case was on a motion to dismiss, and an affidavit filed in support of the motion showed the release provisions of the "Standard Specifications" were a part of the contract.

Respondent cites *Richardson* v. *State of Illinois*, 14 C.C.R. 3. In that case the "Standard Specifications" were specifically made a part of the contract.

Respondent cites case of *Worden-Allen Company* v. *State of Illinois*, 16 C.C.R. 138. That case was disposed of on a motion to dismiss, and the contract contained a specific provision that "the acceptance by the contractor

of the last payment shall operate as and shall be a release to the Department . . ."

Respondent cites the case of *Hartmann-Clark Bros. Company* v. *State of Illinois,* 17 C.C.R. 99. In that case the contract specifically provided "that the work be done according to the 'Standard Specifications' ".

In looking at the contract we can find no such provision as contended for by the respondent. On the contrary, according to the Departmental Report, the "Standard Specifications" were only to be used when referred to in the contract.

In the case at bar no defenses were raised as to payment. Even though they were not raised, if the contract had the applicable provisions of the "Standard Specifications" as to release set forth, such provisions would be binding on the claimant. The Court concludes that the claim of a release is not meritorious.

In disposing of the above questions, it then becomes necessary to determine whether or not claimant is entitled to the relief prayed.

Under Count I of the complaint, the Court concludes as to paragraph 6 that claimant should be allowed 44 F.B.M. of new lumber, which figured at the rate specified of $373.00 per thousand would amount to $16.41.

Under paragraph 7 the Court concludes claimant is entitled to 157 F.B.M. for salvaged lumber, which figured at the rate specified of $293.00 per thousand would amount to $46.00.

Under paragraph 8 the evidence shows that 341.25 cubic yards of concrete were purchased by claimant for the particular job. Claimant's Exhibit 6 shows 5 cubic yards wasted. This deducted from 341.25 cubic yards leaves 336.25 cubic yards. Claimant was paid for 330.8 cubic yards leaving 5.45 cubic yards for which payment

should be made. This figured at $56.50 per cubic yard would amount to $307.92.

The claims under paragraphs 9 and 10 are denied.

Under Count II the evidence shows the work performed was not in the original plans, and that new plans were submitted. Therefore, claimant is entitled to the sums claimed in paragraph 2(a), 2(b), and 2(c) in the amount of $214.80.

The installation of fender timbers were not shown on the plans, and claimant should be allowed the amount claimed under paragraph 2(d) in the amount of $568.13.

Paragraph 2(e) is denied, as the State allowed one-half of this amount on a questionable item.

There is no competent evidence as to value under Count III, and this amount is denied. The question as to the definition of the word "disposal" is not decided.

Count IV claims additional amounts for extending foundation down 4' below the contract line. Claimant's Exhibit 18 shows the installation of the concrete jacket was to extend to the bed of the stream, and specifically provided that the contractor was to verify all measurements in the field, and this was borne out by claimant's own evidence. Claimant contends "Standard Specifications" applies, although the contract does not so specify. Claimant alleged in its complaint that respondent requested the concrete jacket be extended four feet below the contract line. This is not borne out by the evidence. If claimant desires to be bound by the "Standard Specifications", then its entire claim would have to be disallowed under the decisions previously stated. Claimant in its brief states that "Standard Specifications" only applied in specific instances. To this both sides agree. Under paragraph 3 of the contract the contractor agreed that it would satisfy itself as to all conditions affecting

the work. For the reasons assigned, the claim in Count IV is disallowed.

There is no dispute as to Count V, only respondent states that the prevailing rates for labor attached to the contract were minimum. Under paragraph 19 of page 4(b) on information to bidders, the Court is of the opinion that prevailing rates in the area were to be paid, and claimant is entitled to the additional amount claimed of $825.19.

The Court concludes claimant is entitled to recover the sum of $1,978.45.

An award is entered in favor of claimant in the amount of $1,978.45.

<hr />

### SUPPLEMENTAL OPINION

SCHUMAN, C. J.

The Court on rehearing has considered the intent and purpose of the statute "Wages on Public Works", and concludes that said statute was to remedy the evil of paying wages under the prevailing rate in the locality where the work was to be done, and does not affect the contractual provisions between the State and claimant in this case.

In fact the statute provides a declaration of policy that the State in letting public contracts shall require the payment of prevailing wage rates in the community where work is to be done, and the State shall not be a party to sub-standard wage cutting.

In the contract it is provided that, if rates determined by the Department are superseded after the award of the contract, adjustments are to be made.

Evidence was submitted showing that the prevailing rate was different in the locality where the work was

performed. The items as to insurance will be deducted from the amount paid, which was $81.78, and the opinion modified to reduce the amount of $825.19 to $743.41.

Opinion is modified to show an award in the sum of $1,896.67.

An award is entered in favor of claimant in the amount of $1,896.67.